## Seckinger v. Seckinger

*John Patrick Walsh* and *George W. Dunn, Jr.*, for libellant.

*Heilner G. Gaul*, for respondent.

CRUMLISH, J., June 17, 1947.—In an action for divorce on the grounds of cruel and barbarous treatment and indignities, respondent has filed a petition to strike portions of libellant's bill of particulars. Respondent complains, in her petition, as follows:

"2. On May 3, 1947, said libellant filed libellant's bill of particulars. In paragraph 9 thereof, inter alia, libellant charges respondent with adulterous relationship with one John O'Brien. In paragraph 12 thereof, said libellant describes said John O'Brien as petitioner's 'paramour'. The definition or meaning of the word paramour, according to Webster's International Dictionary, is 'a wooer or a mistress'.

"3. Under the divorce laws of the Commonwealth of Pennsylvania, the cause or charge of adultery is entirely a distinct right of action in a divorce proceeding and evidence thereof cannot be introduced without the specific charge of adultery."

Wherefore, respondent requests that we strike from the bill of particulars "all charges of adultery and any kindred allegations relating thereto."

The question raised by respondent may be stated thus: May a libellant who has charged (a) cruel and barbarous treatment and (b) indignities to the person, in the libel, "particularly and specifically" amplify the charge of indignities to the person by alleging, in the bill of particulars, adulterous conduct on the part of respondent?

To answer this question in the affirmative would be, in effect, permitting libellant to prove the complaint of indignities to the person by evidence of adultery, which is in itself, a ground for divorce. Under such circumstances, the separate causes for divorce, adultery and indignities to the person, would merge. We are unable to find, and libellant has not called to our attention, any reported case in this jurisdiction which would support an affirmative answer. On the other hand, the authorities lean the other way. In Whelan v. Whelan, 19 Dist. R. 21 (1909), Judge Sulzberger said (p. 22):

"The libellant's evidence points to shameless adultery of the respondent as one of the grievances from which

she suffered, and which she now chooses to use as evidence of cruel and barbarous treatment. We are not convinced that the major offence against the matrimonial obligation can be made to do duty as mere evidence of the minor offence."

In Hexamer v. Hexamer, 42 Pa. Superior Ct. 226, 239 (1910), it was said,

"It has been suggested in the argument for the appellant that the latter withdrew from the libel the allegation of adultery on the part of his wife because of his regard for the future of his child, but, that if necessary, the circumstances disclosed by the evidence were sufficient to establish the graver charge. We cannot thus change the issue. The libellant cannot have a decree of divorce upon any ground other than that alleged in his libel." See also 1 Freedman, Law of Marriage and Divorce in Pennsylvania, 715, §316, and cases there cited.

In Macormac v. Macormac, 159 Pa. Superior Ct. 378, 381-82 (1946), relied on by libellant, it was said: "When he returned from a 14-month absence, libellant 'found that my wife had been having an affair with a married man and was away with him at the time.' When he came home on his first furlough, 'My wife was away and I did not see her'. When he was home again on a furlough in March 1945, he 'learned that she had been going around with the other man since I had been there before'. The respondent repeatedly told her husband that she did not love him but loved the other man and that she wanted a divorce, that the other married man wanted a divorce so that they might marry. The evidence adduced in this case would not, standing alone, sustain a conviction of adultery, but certain the libellant was under no illusions as to what was taking place between his wife and the other married man when they were together, and, assuming him to be of ordinary intelligence and sensibility, such

a situation as existed would undoubtedly render his condition intolerable and his life burdensome."

In the Macormac case, as in Wick v. Wick, 352 Pa. 25, 28-9 (1945); Dearth v. Dearth, 141 Pa. Superior Ct. 344 (1940); Lowe v. Lowe, 148 Pa. Superior Ct. 439 (1942); Smith v. Smith, 157 Pa. Superior Ct. 582, 587 (1945), it was held that conduct on the part of *a respondent, although not sufficient to support a charge of adultery, may be considered as a form of personal indignities to libellant.* None of these last cited cases go so far as to say that conduct sufficient to support a charge of adultery is competent to support a charge of indignities to the person, and, therefore, the question posed at the beginning of this opinion must be answered in the negative.

Accordingly, the rule is made absolute and the portions of the bill of particulars which allege charges of adultery or adulterous conduct are stricken. Leave is granted to libellant to amend the bill of particulars, if he sees fit to do so, within 15 days from the date hereof.